**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **COMMUNITY FOR PERMANENT SUPPORTED HOUSING; CYNTHIA CURTIS; MARY HUBBARD; IRENE NIEMOTKA; MARGARET ("PEGGY") SHADDUCK; and KELLY WATERMAN,** | § § § § § | |
| **Plaintiffs,** | § | **Case No. 3:18-cv-02030-K** |
| **V.** | § § | |
| **HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS,** | § § | |
| **Defendant.** | § | |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND BRIEF IN SUPPORT**

**Gerald Bright**
State Bar No. 02991720
**David L. Craft**
State Bar No. 00790522
WALKER BRIGHT P.C.
100 North Central Expressway, Suite 800
Richardson, Texas 75080
Telephone: (972) 744-0192
Facsimile: (972) 744-0067
Email: gerald.bright@wblpc.com

# TABLE OF CONTENTS

**Page**


I. SUMMARY OF MOTION ........................................ 1

II. ARGUMENT AND AUTHORITIES REQUIRING DISMISSAL ........................................ 4

A. Applicable Legal Standards ........................................ 4

1. The standard for dismissal under Rule 12(b)(6): does the complaint state a valid claim for relief? ........................................ 4

2. A complaint must state sufficient non-conclusory facts to permit the reasonable inference that the defendant is liable. ........................................ 6

B. Arguments and Authorities Requiring Dismissal of Each of Plaintiffs' Claims ........................................ 7

1. Plaintiffs do not have standing to maintain their claims. ........................................ 7

2. Plaintiffs fail to state a claim under Title II of the ADA. ........................................ 9

3. Plaintiffs fail to state a claim under Section 504 of the REHABILITATION ACT ........................................ 10

4. Plaintiffs fail to state a claim under Section 3604 of the FAIR HOUSING ACT ........................................ 11

5. Plaintiffs fail to state a claim under Section 301.025 of the TEXAS PROPERTY CODE ........................................ 14

III. CONCLUSION ........................................ 14

IV. PRAYER ........................................ 14

CERTIFICATE OF SERVICE ........................................ 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......... 6, 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......... 5-6, 7

*Bennett-Nelson v. Louisiana Bd. of Regents*,
431 F.3d 448 (5th Cir.2005), *cert. denied*,
547 U.S. 1098, 126 S.Ct. 1888, 164 L.Ed.2d 568 (2006) .......... 10

*Coleman v. Dretke*,
409 F.3d 665 (5th Cir. 2005) (*per curiam*) .......... 2

*Conley v. Gibson*,
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .......... 5

*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*,
453 F.3d 1175 (9th Cir. 2006) .......... 12

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) .......... 5

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) .......... 2

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011) .......... 9

*Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) .......... 2

*Hooker v. Dallas Indep. Sch. Dist.*,
No. 3:09-CV-1289-D, 2010 WL 4025877, at *4 (N.D. Tex. Oct. 13, 2010) .......... 8

*Jackson v. Procunier*,
789 F.2d 307 (5th Cir. 1986) .......... 4-5

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) .......... 5

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) .......... 5

**<u>TABLE OF AUTHORITIES</u>, continued**

**<u>Page</u>**

**<u>Cases</u>, continued**

*Los Angeles v. Lyons*,
461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) .......... 8

*Lowe v. Wal-Mart Stores, Inc.*,
No. 3:16-CV-2017-N-BK, 2017 WL 1102806, at *2 (N.D. Tex. Feb. 21, 2017),
report and recommendation adopted,
No. 3:16-CV-2017-N-BK, 2017 WL 1091652 (N.D. Tex. Mar. 23, 2017) .......... 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) .......... 8

*M.M. v. School Bd. of Lee County, Fla.*,
2008 WL 4181212 (M.D. Fla. Sept. 3, 2008) .......... 11

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
369 F.3d 464 (5th Cir. 2004) .......... 5

*Meadowbriar Home for Children, Inc. v. Gunn*,
81 F.3d 521 (5th Cir. 1996) .......... 14x

*Morin v. Caire*,
77 F.3d 116 (5th Cir. 1996) .......... 4-5

*Norris v. Hearst Trust*,
500 F.3d 454 (5th Cir. 2007) .......... 2

*Overlook Mut. Homes, Inc. v. Spencer*,
415 Fed. Appx. 617 (6th Cir. 2011) .......... 12

*Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*,
589 F. Supp. 2d 759 (S.D. Miss. 2008) .......... 11

*Washington v. U. S. Dep't of Hous. & Urban Dev.*,
953 F. Supp. 762 (N.D. Tex. 1996) .......... 4, 5

**<u>Statutes</u>**

24 C.F.R. § 8.4(b)(1)(iv) .......... 4, 12

24 C.F.R. § 8.4(c)(1) .......... 3-4, 12

24 C.F.R. § 982.207(b)(3) .......... 4, 12

24 C.F.R. § 983.210(e) .......... 2, 3

**TABLE OF AUTHORITIES, continued**

**Page**

**Statutes, continued**

24 C.F.R. § 983.251(a)(4) ........................................ 3

TEX. PROP. CODE § 301.001 *et seq*. (the TEXAS FAIR HOUSING ACT) .............................. 11-12, 14

29 U.S.C. § 794 ("Section 504 of the REHABILITATION ACT") ........................................ 10-11

42 U.S.C. § 3601 *et seq.* (the FAIR HOUSING ACT of 1968) ...................................... 11-12, 13, 14

42 U.S.C. § 12101 *et seq.* ("Title II of the ADA") ........................................ 9

42 U.S.C. § 12133 ........................................ 10-11

**Rules**

FED. R. CIV. P. 1 ........................................ 6

FED. R. CIV. P. 8(a)(2) ........................................ 7

FED. R. CIV. P. 12(b)(6) ........................................ 4, 5, 6

FED. R. CIV. P. 12(b)(6) ........................................ x

FED. R. CIV. P. 12(b)(6) ........................................ x

FED. R. CIV. P. 12(b)(6) ........................................ x

FED. R. CIV. P. 12(b)(6) ........................................ x

FED. R. CIV. P. 12(b)(6) ........................................ x

FED. R. CIV. P. 12(b)(6) ........................................ x

PROJECT-BASED VOUCHER PROGRAM FINAL RULE,
Fed. Reg. October 13, 2005 (Vol. 70, No. 167, Page 59907) ........................................ 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **COMMUNITY FOR PERMANENT SUPPORTED HOUSING; CYNTHIA CURTIS; MARY HUBBARD; IRENE NIEMOTKA; MARGARET ("PEGGY") SHADDUCK; and KELLY WATERMAN, Plaintiffs,** | § | |
| **V.** | § | **Case No. 3:18-cv-02030-K** |
| **HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS, Defendant.** | § | |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND BRIEF IN SUPPORT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Defendant Housing Authority of the City of Dallas, Texas ("DHA"), and pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, files this its motion to dismiss all of Plaintiffs' claims alleged against DHA in Plaintiffs' Complaint ("Complaint") (Doc. 1).

## I. SUMMARY OF MOTION

Plaintiffs Cynthia Curtis ("Curtis"), Mary Hubbard ("Hubbard"), Irene Niemotka ("Niemotka"), Margaret "Peggy" Shadduck ("Shadduck"), and Kelly Waterman ("Waterman") (collectively, the "Individual Plaintiffs") are all mothers of adult children with intellectual and developmental disabilities ("I/DDs"), who, along with Plaintiff Community for Permanent Supported Housing ("CPSH"), have attempted to assert claims against DHA for violations of: Title II of the AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.* ("Title II of the

ADA"); Section 504 of the REHABILITATION ACT, 29 U.S.C. § 794 ("Section 504"); the FAIR HOUSING ACT of 1968, as amended, 42 U.S.C. § 3601, *et seq.*; and the TEXAS FAIR HOUSING ACT, TEX. PROP. CODE § 301.025. *See* Complaint at 2.

Plaintiffs' claims all arise out of DHA's alleged "cancellation" of a "Request for Proposals (RFP) for Section 8 Project-Based Voucher (PBV) Assistance" issued by DHA that sought to make available "up to 50 Section 8 Project-Based Vouchers (PBVs) for DHA's Neighborhood Housing Pilot Program of Permanent Supportive Housing for Persons with Intellectual or Developmental Disabilities (IDD)."[1] In a nutshell, Plaintiffs had hoped that through this RFP, the Individual Plaintiffs would be able to "rent single family homes [that they owned] to their adult children with I/DDs" and "receive the value of the voucher each month to help them pay for the mortgage, maintenance and other associated costs." *See* Plaintiffs' Complaint at 3-4.

Unfortunately, after advertising for this RFP, DHA became aware of a number of potential issues with the RFP. First, Section 504's implementing regulations are anything but a model of clarity. For instance, on the one hand, 24 C.F.R. § 983.210(e)[2], states that:

> "By execution of the [Housing Assistance Payments] contract, the owner certifies that at such execution and at all times during the term of the [Housing Assistance Payments] contract:
>
> . . .

[1] This RFP can be found on DHA's website at the following internet address: http://www.dhadal.com/PDF/RFP/Section8%20PBV%20AssistancePilotProg.pdf. DHA respectfully requests that the Court take judicial notice of the RFP, without converting this motion into a motion for summary judgment, as the Fifth Circuit has held that, when deciding motions to dismiss, courts may take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also*, *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."). The Fifth Circuit has also made clear that courts may take judicial notice of information contained on governmental websites. *See, Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of an approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (*per curiam*) (taking judicial notice of a Texas agency's website).

[2] Formerly 24 C.F.R. § 983.209(e).

> (e) **The owner (including a principal or other interested party) is not the spouse, parent, child, grandparent, grandchild, sister, or brother of any member of a family residing in a contract unit.”** (emphasis added).

This restriction against a family member renting a home to a relative is further elaborated upon in a response by HUD to a comment included in the Project-Based Voucher Program Final Rule published in the Federal Register on October 13, 2005 (reference Volume 70, No. 167, Page 59907). In this response, HUD states as follows:

> “**To allow an owner of a project-based voucher development to rent to close family relatives (whether disabled or not) creates a systematic incentive to owners to misuse the program.** Persons requesting a reasonable accommodation in policies in order to effectively participate in the housing choice voucher program are not harmed by restricting the exception to renting to relatives to the tenant-based program.” (emphasis added).

On the other hand, 24 C.F.R. § 983.251(a)(4), seemingly would allow DHA to approve a tenancy between members of the same family if it determined that “approving the unit would provide reasonable accommodation for a family member who is a person with disabilities.”

As referenced by Plaintiffs in their Complaint, DHA sought guidance from HUD on this apparent conflict in the regulations. *See generally*, Plaintiffs’ Complaint at 21. Ultimately, HUD concluded that 24 C.F.R. § 983.210(e) was not to be viewed as an impediment to granting a reasonable accommodation request to approve a tenancy where the owner is a close relative, and that where this section applies, DHA should handle a PBV tenant’s or applicant’s reasonable accommodation request as it would any other reasonable accommodation request. In the event that DHA granted the requested accommodation, it could then request a regulatory waiver of the certification requirement found in 24 C.F.R. § 983.210(e) from HUD.

In this same correspondence, HUD advised DHA that the RFP’s proposal to limit Project Based Voucher (“PBV”) assistance to a specific class of individuals with disabilities (*i.e.*,

individuals with I/DDs) may not be permissible under Section 504. *See, e.g.*, 24 C.F.R. § 8.4(c)(1) (prohibiting the exclusion of other qualified individuals with handicaps from participation in a program, unless the program "is limited by Federal statute or Executive Order to a different class of individuals"); 24 C.F.R. § 8.4(b)(1)(iv) (prohibiting "different or separate housing, aid, benefits or services to individuals with handicaps or to any class of individuals with handicaps"); 24 C.F.R. § 982.207(b)(3) (applicable program regulation precluding preferences for persons with a specific disability). Thus, based upon the above-cited regulations, Plaintiffs' requests for an RFP solely for the benefit of individuals with I/DDs is not even allowed under the current regulations, and therefore each of Plaintiffs' claims against DHA should be dismissed.

Even if the relief requested by Plaintiffs was allowable, which is denied, DHA would nevertheless be entitled to dismissal of each of Plaintiff's claims based upon the Plaintiffs' lack of standing to bring such claims, and because their Complaint fails to plead facts beyond a formulaic recitation of the elements of each of their claims. Plaintiffs' allegations against DHA are largely conclusory assertions of misconduct and liability lacking factual enhancement, and Plaintiffs' claims fail to identify any wrongdoing on the part of DHA which could give rise to any of their claims. Therefore, the DHA is entitled to dismissal of all of Plaintiffs' claims against it.

## II. ARGUMENT AND AUTHORITIES REQUIRING DISMISSAL

### A. Applicable Legal Standards

#### 1. The standard for dismissal under Rule 12(b)(6): does the complaint state a valid claim for relief?

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon which relief can be granted. *Washington v. U. S. Dep't of Hous. & Urban Dev.*, 953 F. Supp. 762, 768 (N.D. Tex. 1996). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the

claims stated in the complaint, and such a motion must be evaluated solely on the basis of the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986); *see also, Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

There are two primary considerations for a court's analysis of the propriety of a motion to dismiss under Rule 12(b)(6). First, the allegations contained in the complaint are to be construed in the plaintiff's favor and all *well-pleaded* facts are to be accepted as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 205 (5th Cir. 2004). However, conclusory statements in a complaint are not to be accorded a presumption of truth. *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Washington*, 953 F. Supp. at 768. Therefore, conclusory allegations and legal conclusions masquerading as factual assertions are not adequate to prevent dismissal for failure to state a claim. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

Second, the Supreme Court held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that the factual allegations in a complaint must be specific enough to raise a right to relief above the speculative level on the assumption that all of the allegations are true. *Twombly*, 550 U.S. 570. That is, it is no longer sufficient that relief could be granted under some theoretical set of facts consistent with a complaint's allegations, which was the familiar standard the Supreme Court established in *Conley*[3]. Rather, under *Twombly*, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, to survive a motion to dismiss made pursuant to Rule 12, a complaint must contain

[3] *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* The plausibility standard applies to all of a plaintiff's claims.

**2. A complaint must state sufficient non-conclusory facts to permit the reasonable inference that the defendant is liable.**

The Supreme Court clarified the scope and application of *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *Iqbal* makes clear that the *Twombly* decision was based upon the Supreme Court's interpretation and application of Rule 8, which "governs the pleading standard 'in all civil actions and proceedings in the United States district courts.'" *Iqbal*, 556 U.S. at 684 (citing *Twombly*, 550 U.S. at 554 and applying FED. R. CIV. P. 1). Therefore, *Twombly*'s (and *Iqbal*'s) requirements apply to Plaintiffs' allegations against the Defendants in this case.

The legal foundation of this motion is set out in section IV-A of the opinion of the Court in *Iqbal*. In summary, *Iqbal* held that the following standards apply when evaluating the sufficiency of all federal complaints:

- The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

- A complaint must be plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.at 556).

- "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

- A complaint is insufficient if it merely tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

The *Iqbal* Court stated that its decision in *Twombly* was supported by two principles, from which the foregoing standards were derived. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Second, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (applying FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing the pleader is entitled to relief[.]")). Thus, *Iqbal* directs that a district court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Such conclusions are not "well-pleaded" factual allegations, and do not give rise to a plausible claim for relief.

**B. <u>Arguments and Authorities Requiring Dismissal of Each of Plaintiffs' Claims</u>**

In this case, Plaintiffs claim that DHA violated Title II of the ADA, Section 504 of the REHABILITATION ACT, the FAIR HOUSING ACT, and Section 301.025 of the TEXAS PROPERTY CODE by "canceling" the RFP in question related to persons with I/DDs. Each of Plaintiffs' claims fail because Plaintiffs do not have standing to bring such claims, and because of Plaintiffs' failure to establish each of the essential elements of their claims. Thus, dismissal of each of Plaintiffs' claims is warranted.

**1. Plaintiffs do not have standing to maintain their claims.**

To begin with, Plaintiffs do not have standing to maintain their claims against DHA, and their claims should therefore be dismissed on this basis alone. In particular, the Individual

Plaintiffs, as parents of adult children with I/DDs, and Plaintiff CPSH, do not have standing to bring claims against DHA because they do not allege that they were discriminated against on the basis of a disability. *See, Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-CV-1289-D, 2010 WL 4025877, at *4 (N.D. Tex. Oct. 13, 2010) (Fitzwater, C.J.) ("Parents who attempt to enforce only their children's rights do not have standing under the ADA or the REHABILITATION ACT."); as cited in *Lowe v. Wal-Mart Stores, Inc*., No. 3:16-CV-2017-N-BK, 2017 WL 1102806, at *2 (N.D. Tex. Feb. 21, 2017), report and recommendation adopted, No. 3:16-CV-2017-N-BK, 2017 WL 1091652 (N.D. Tex. Mar. 23, 2017). In addition, CPSH never submitted a response to DHA's RFP.

Similarly, Plaintiffs' claims should be dismissed based upon Plaintiffs' failure to establish "the irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). This standard requires Plaintiffs to satisfy three basic elements. First, Plaintiffs must allege that they have suffered or imminently will suffer an "injury in fact," an encroachment upon a legally protected interest which is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.; see also, Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Second, Plaintiffs must allege that there is a causal connection between any injury they claim to have suffered and DHA's conduct. *See, Lujan,* 504 U.S. at 560. Third, it must be "likely" that a federal court decision in Plaintiffs' favor will redress the injury. *See, Lujan*, 504 U.S. at 561. Plaintiffs, as the parties seeking federal jurisdiction, bear the burden of establishing these factors. *See id.*

In this case, Plaintiffs' Complaint fails to establish that they have suffered or imminently will suffer an injury in fact. To begin with, Plaintiffs have failed to plead sufficient facts to establish that DHA cancelled the RFP in question. DHA has specific procedures for canceling RFPs, and Plaintiffs' pleadings are noticeably silent with respect to any such procedures to cancel

the RFP in question. Instead, Plaintiffs simply allege that the RFP was cancelled, and this conclusory allegation is wholly insufficient under *Iqbal*. Also, throughout their Complaint, Plaintiffs reference events that may happen in the future, but which fail to show an actual or imminent injury. For example, each of the Individual Plaintiffs seems to have figured out a workable solution to their adult children's current housing needs, but are attempting to find a permanent solution for their adult children's long-term living needs in the event that their families are no longer able to take care of them. *See* Complaint at 23-31. In fact, Plaintiffs' Complaint even establishes that Plaintiff Mary Hubbard's adult child, Jessica, currently lives in an apartment with a "tenant-based Housing Choice Voucher issued by DHA" and a "caregiver (paid for by Medicaid)" which clearly negates any claim of an actual or imminent injury. *See* Plaintiffs' Complaint at 23. Based upon the foregoing, dismissal of each of Plaintiffs' claims is warranted due to Plaintiffs' failure to establish "the irreducible constitutional minimum of standing."

**2. Plaintiffs fail to state a claim under Title II of the ADA.**

In their Complaint, Plaintiffs first attempt to state a claim under Title II of the ADA. *See* Plaintiffs' Complaint at 33. In order to state a claim for relief under Title II of the ADA, a Plaintiff must allege: (1) that he/she has a qualifying disability; (2) that he/she is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his/her disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

As noted above, none of the Plaintiffs in this case have alleged that they have a qualifying disability, and therefore they cannot establish this essential element of their claim. Furthermore, none of the Plaintiffs have established that they were denied the benefits of services, programs, or activities for which DHA is responsible, or that they were otherwise discriminated against by

DHA. DHA simply advertised for an RFP which clearly stated that it reserved the right to "cancel," "re-issue" or "modify," and to date, has not accepted Plaintiffs' proposals submitted in connection with the RFP. Clearly, such actions do not support a claim for denial of benefits or discrimination on the part of DHA. Finally, even if Plaintiffs could somehow establish the first two elements of their claim under Title II of the ADA (which is denied), Plaintiffs' claim nevertheless fails based on the fact that Plaintiffs' pleadings fail to establish that any alleged discrimination occurred as a result of anyone's disability. In this regard, Plaintiffs' make the conclusory allegation that DHA's so-called "policy or practice of categorically barring family ownership in the PBV program has the effect of barring Plaintiffs' from participating in that program." *See* Plaintiff's Complaint at 33. Even if DHA did have such a policy or practice (which is denied), Plaintiffs' pleadings fail to establish how such a policy or practice uniquely discriminates against individuals with I/DDs or their parents. Therefore, each of Plaintiffs' claims under Title II of the ADA should be dismissed with prejudice.

**3. Plaintiffs fail to state a claim under Section 504 of the REHABILITATION ACT.**

Section 504 of the REHABILITATION ACT provides: "no otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance …". 29 U.S.C. § 794(a). The Fifth Circuit has recognized that "the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the REHABILITATION ACT." *Bennett-Nelson v. Louisiana Bd. of Regents,* 431 F.3d 448, 454 (5th Cir.2005), *cert. denied,* 547 U.S. 1098, 126 S.Ct. 1888, 164 L.Ed.2d 568 (2006); *see also,* 42 U.S.C. § 12133 (stating that the "remedies,

procedures, and rights" of Title II of the ADA are the same as those set forth in the REHABILITATION ACT).

In order to state a claim under the REHABILITATION ACT, Plaintiffs must establish that: "(1) the plaintiff is an individual with a disability under the Rehabilitation Act; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her disability; and (4) the relevant program or activity is receiving federal financial assistance." *Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*, 589 F. Supp. 2d 759, 764–65 (S.D. Miss. 2008); quoting *M.M. v. School Bd. of Lee County, Fla.*, 2008 WL 4181212, 5 (M.D. Fla. Sept. 3, 2008). As with the prior discussion on Plaintiffs' claim under Title II of the ADA, Plaintiffs have not established that they are individuals with a disability, nor have they established that they are being excluded from participation in, being denied the benefits or, or being subjected to discrimination under the program solely by reason of his/her disability. Rather, they have only asserted that DHA did not accept their proposals under the RFP in question, and then make the unsupported, conclusory allegation that somehow by not accepting their proposals and not awarding Section 8 payment contracts, DHA was discriminating against individuals with I/DDs. Therefore, just like their claims under Title II of the ADA, Plaintiffs' claims under Section 504 of the Rehabilitation Act should also be dismissed.

**4. Plaintiffs fail to state a claim under Section 3604 of the FAIR HOUSING ACT.**

Plaintiffs also attempt to state a claim under Sections 3604(f)(3)(B) and 3604(f)(1) of the FAIR HOUSING ACT. In order to prevail on a claim under § 3604(f)(3)(B), a plaintiff must prove all of the following elements: "(1) that the plaintiff or his associate is handicapped within the

meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the disability; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *accord, Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. Appx. 617, 621 (6th Cir. 2011).

In this case, as with Plaintiffs' previous two claims, Plaintiffs cannot establish that they are disabled or handicapped. Furthermore, Plaintiffs cannot establish that their proposed accommodation, namely requiring DHA to accommodate them by accepting their proposals submitted in connection with the RFP and award Section 8 payment contracts, is reasonable. As noted above, the RFP in question, which proposes to limit Project Based Voucher ("PBV") assistance to a specific class of individuals with disabilities (*i.e.*, individuals with I/DDs) may not be permissible under Section 504. *See, e.g.*, 24 C.F.R. § 8.4(c)(1) (prohibiting the exclusion of other qualified individuals with handicaps from participation in a program, unless the program "is limited by Federal statute or Executive Order to a different class of individuals"); 24 C.F.R. § 8.4(b)(1)(iv) (prohibiting "different or separate housing, aid, benefits or services to individuals with handicaps or to any class of individuals with handicaps"); 24 C.F.R. § 982.207(b)(3) (applicable program regulation precluding preferences for persons with a specific disability). Thus, based upon the above-cited regulations, Plaintiffs' claim that DHA should approve their proposals for an RFP solely for the benefit of individuals with I/DDs may not even be allowed under current regulations, and clearly, this claim could not constitute a reasonable accommodation. And, to the extent that Plaintiffs' are claiming that DHA should reasonably accommodate them by

allowing parents to lease to their adult children, Plaintiffs' pleadings fail to establish that such an accommodation is necessary to afford their adult children an equal opportunity to use and enjoy the dwelling. In this regard, Plaintiffs make only conclusory allegations with respect to how parents leasing to their own adult children with I/DDs would allow their adult children an equal opportunity to use and enjoy the dwelling, whereas a situation involving other landlords leasing to their adult children would not. Such conclusory allegations are insufficient to state a claim for relief under the FAIR HOUSING ACT, just as with Plaintiffs' conclusory allegations that DHA "cancelled" the RFP in question as a result of not awarding Section 8 payment contracts. In sum, Plaintiffs' pleadings fail to establish each element of a claim for relief under Section 3604(f)(3)(B) of the FAIR HOUSING ACT, and therefore these claims should be dismissed.

Likewise, Plaintiffs' claims under Section 3604(f)(1) of the FAIR HOUSING ACT should be dismissed. In connection with this claim, Plaintiffs make the repeated conclusory allegation that DHA has enacted a "categorical ban on permitting the rental of PBV-subsidized properties to adult children with I/DDs by family members." Again, there is no evidence of any such "ban" in this case, other than with respect to Plaintiffs' proposals under the RFP not being accepted, but even if there was (which is denied), Plaintiffs' claims regarding rental properties being made unavailable to persons with I/DDs if their parents are not allowed to be their landlords is completely speculative. In fact, even Plaintiffs' own pleadings belie this argument as at least one of the Plaintiffs' adult children has been awarded a voucher through DHA, and is receiving housing benefits. Furthermore, any suggestion by Plaintiffs that any actions by DHA were taken "with the intent of making housing unavailable," is simply devoid of factual support, and fails to meet the standards set forth in *Iqbal*. Thus, dismissal of both of Plaintiffs' FAIR HOUSING ACT claims is warranted.

**5. Plaintiffs fail to state a claim under Section 301.025 of the TEXAS PROPERTY CODE.**

The TEXAS FAIR HOUSING ACT ("TFHA"), codified at Section 301.001, *et seq.* of the TEXAS PROPERTY CODE "provide[s] rights and remedies substantially equivalent to those granted under federal law." TEX. PROP.CODE Ann. § 301.002; *see also, Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 531 n. 8 (5th Cir. 1996) (recognizing that TFHA is "substantially similar" to FHA). Indeed, the language of §§ 301.025(a), 301.025(b), and 301.025(c)(2) of the TFHA is nearly identical to the language of §§ 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B) of the federal FHA. *Compare* TEX. PROP.CODE Ann. § 301.025 *with* 42 U.S.C. § 3604(f).

Accordingly, for the reasons set forth in the previous section of this brief, DHA asserts that Plaintiffs' TFHA claims should be dismissed in their entirety.

## III. CONCLUSION

Plaintiffs' allegations in their Complaint do not state a plausible claim for relief against DHA. Plaintiffs' allegations, particularly those regarding a "categorical ban on permitting the rental of PBV-subsidized properties to adult children with I/DDs by family members" are vague and conclusory, and do not provide factual content beyond labels, conclusions, and a formulaic recitation of the minimal elements of their claims. In addition, Plaintiffs have wholly failed to provide well-pleaded facts to establish that they have standing to bring their claims and/or to establish each of the elements of their claims. These failures are fatal to Plaintiffs' claims, and therefore, this motion to dismiss should be granted in its entirety.

## IV. PRAYER

WHEREFORE, Defendant DHA prays that Plaintiffs take nothing by this suit against it, that all relief requested by Plaintiffs be denied, that the Defendant DHA recover its attorneys' fees

incurred in defending this action, all costs of suit, and for such other and further relief to which Defendant DHA is entitled.

Respectfully submitted,

WALKER BRIGHT PC
100 N. Central Expressway, Ste. 800
Richardson, Texas 75080
Telephone : (972) 744-0192
Facsimile : (972) 744-0067

/s/ Gerald Bright
GERALD BRIGHT
State Bar No. 02991720
DAVID CRAFT
State Bar No. 00790522

**Attorneys for Defendant DHA**

**CERTIFICATE OF SERVICE**

I certify that on the 12th day of September, 2018 I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Gerald Bright
Gerald Bright