**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **COMMUNITY FOR PERMANENT SUPPORTED HOUSING; CYNTHIA CURTIS; MARY HUBBARD; IRENE NIEMOTKA; MARGARET ("PEGGY") SHADDUCK; and KELLY WATERMAN,** | § | |
| **Plaintiffs,** | § | **Case No. 3:18-cv-02030-K** |
| **V.** | § | |
| **HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS,** | § | |
| **Defendant.** | § | |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS' REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Defendant Housing Authority of the City of Dallas, Texas ("DHA"), and pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, files this its Reply to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Brief in Support. In support hereof, Defendant respectfully presents the following:

## I. BACKGROUND

Plaintiffs Cynthia Curtis ("Curtis"), Mary Hubbard ("Hubbard"), Irene Niemotka ("Niemotka"), Margaret "Peggy" Shadduck ("Shadduck"), and Kelly Waterman ("Waterman") (collectively, the "Individual Plaintiffs") are all mothers of adult children with intellectual and developmental disabilities ("I/DDs"), who, along with Plaintiff Community for Permanent Supported Housing ("CPSH"), have attempted to assert claims against DHA for violations of: Title II of the AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.* ("Title II of the ADA"); Section 504 of the REHABILITATION ACT, 29 U.S.C. § 794 ("Section 504"); the FAIR

HOUSING ACT of 1968, as amended, 42 U.S.C. § 3601, *et seq.*; and the TEXAS FAIR HOUSING ACT, TEX. PROP. CODE § 301.025. *See* Plaintiffs' Original Complaint ("Complaint")(Doc. 1) at 2.

Plaintiffs filed their Complaint on August 6, 2018. On September 12, 2018, DHA filed a Motion to Dismiss Pursuant to Rule 12(b)(6)("Defendant's Motion")(Doc. 19), seeking dismissal of each of Plaintiffs' claims. On October 17, 2018, Plaintiffs filed a Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiffs' Opposition")(Doc. 29). This Reply follows.

## II. ARGUMENTS AND AUTHORITIES

As noted in Defendant's Motion, Plaintiffs, as the parties seeking federal jurisdiction, bear the burden of establishing each of the three elements of the "irreducible constitutional minimum of standing." *See* Defendant's Motion at 8; citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, Plaintiffs must allege that they have suffered or imminently will suffer an "injury in fact," an encroachment upon a legally protected interest which is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.; see also, Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Second, Plaintiffs must allege that there is a causal connection between any injury they claim to have suffered and DHA's conduct. *See, Lujan,* 504 U.S. at 560. Third, it must be "likely" that a federal court decision in Plaintiffs' favor will redress the injury. *See, Lujan,* 504 U.S. at 561. Due to the fact that Plaintiffs cannot meet their burden to establish that they have standing in this case, each of Plaintiffs' claims should be dismissed.

First, DHA is entitled to dismissal of each of Plaintiffs' claims because Plaintiffs have failed to establish that they have suffered an encroachment upon any legally protected interests which are "actual or imminent." *Id.* at 560. The arguments made in Plaintiffs' Opposition clearly

establish that no actual or imminent encroachments upon any legally protected interests currently exist, and that their entire case rests upon conjecture as to simply how they believe DHA will act when faced with a situation involving future Request for Proposals ("RFP's") for Project Based Vouchers ("PBV's") and/or requests for reasonable accommodation.

In Plaintiffs' Opposition, Plaintiffs state that they "do not contend that DHA discriminated against people with I/DD's 'by not accepting their proposals and not awarding Section 8 payment contracts.'" Plaintiffs' Opposition at 17. Instead, Plaintiffs:

> contend that DHA discriminates by refusing to offer reasonable modifications to its rigid refusal to permit PBV program participants to rent to family members even where necessary to permit individuals with disabilities and their families to enjoy the benefits of DHA's PBV offerings.

Plaintiffs' Opposition at 17-18.

Thus, Plaintiffs' entire case is forward looking, and assumes both: (1) that DHA currently has some type of a policy of refusing to permit PBV program participants to rent to family members even where accommodations are required for individuals with disabilities; and (2) that DHA would follow this alleged policy and reject a reasonable accommodation request submitted by an individual with I/DD's to live in a home owned by a family member. In fact, Plaintiffs actually concede that what they are actually asking for in this lawsuit is for "DHA to give individuals with I/DD's and their families . . . <u>the benefit of future RFP's</u> by permitting parents to lease to their adult children where necessary to accommodate disability." Plaintiffs' Opposition at 21-22 (emphasis added). In that Plaintiffs' claims are merely conjectural or hypothetical, and are based on some unidentified RFP's that have not even been issued to date and/or some requests for reasonable accommodation that have never been made by persons with I/DD's, Plaintiffs have

failed to demonstrate any "actual or imminent" encroachments upon a legally protected interest, and dismissal of each of Plaintiffs' claims is warranted.

Instead of presenting the Court with an actual or imminent encroachment on some protected interest, Plaintiffs spend nearly the entirety of Plaintiffs' Opposition complaining about an alleged "policy or practice of categorically banning family ownership in the PBV program." Plaintiffs' Complaint at 33; *see also* Plaintiffs' Opposition at 1, 2, 3, 6, 7, 9, 11, 13, 16, 17, 18, 19, 20, 21, 22. Plaintiffs phrase this so-called policy in many different ways throughout their pleadings, however, Plaintiffs' claim that DHA even has such a policy is merely a conclusory allegation masquerading as a factual assertion, which is insufficient to withstand Defendant's Motion to Dismiss. *See Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018)("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss")(citations omitted); *see also Ashcroft v. Iqbal, supra,* 556 U.S. at 681 (finding that conclusory allegations of the existence of a wrongful policy are "not entitled to be assumed true" in connection with a motion to dismiss).

Drilling down to the factual underpinnings of Plaintiffs' conclusory allegation regarding the alleged existence of a "policy of refusing to permit PBV participants to rent to family members, even where necessary to accommodate the needs of people with disabilities" (Plaintiffs' Opposition at 18), the only factual allegations made by Plaintiffs in support of this alleged policy relate to DHA's decision "to discontinue the PBV program before it had even acted on the applications" and an alleged communication of this decision to CPSH by DHA's President in April of 2017[1]. Plaintiffs' Complaint at 19. In this portion of Plaintiffs' Complaint, Plaintiffs allege

---

[1] Plaintiffs also claim that DHA cancelled the PBV program at issue, but just like their conclusory allegation about the alleged existence of the policy referenced above, this is another conclusory allegation

that DHA "effectively adopted this blanket ban on family-as-owner arrangements for all its PBV offerings" (Plaintiffs' Opposition at 19), while conveniently downplaying the fact that during this period DHA was merely seeking clarification from the U.S. Department of Housing and Urban Development ("HUD") as to two (2) conflicting federal regulations, and the fact that DHA ultimately had to put this RFP on hold after being advised by HUD that the entire RFP might not be permissible under Section 504 because it proposed to limit PBV assistance to a specific class of individuals (i.e. persons with I/DD's).

Contrary to Plaintiffs' suggestions, DHA did not artificially manufacture this dispute in order to keep persons with I/DD's from obtaining reasonable accommodations. Instead, Section 504's implementing regulations conflict on this issue relating to family ownership. On the one hand, 24 C.F.R. § 983.210(e)[2], which deals with a certification by the owner of the dwelling at the execution of the Housing Assistance Payments Contract, states that:

> By execution of the [Housing Assistance Payments] contract, the owner certifies that at such execution and at all times during the term of the [Housing Assistance Payments] contract:
>
> . . .
>
> (e) **The owner (including a principal or other interested party) is not the spouse, parent, child, grandparent, grandchild, sister, or brother of any member of a family residing in a contract unit.** (emphasis added).

This restriction against a family member renting a home to a relative is further elaborated upon in a response by HUD to a comment included in the Project-Based Voucher Program Final Rule

---

masquerading as a factual assertion. In order to cancel a solicitation, DHA must follow its Procurement Procedures, and Plaintiffs have not alleged any specific facts supporting their assertion that the PBV program at issue was cancelled. However, for the purposes of Defendant's Motion, Plaintiffs' assertion that DHA discontinued the PBV program before acting on the applications must be taken as true.

[2] Formerly 24 C.F.R. § 983.209(e).

published in the Federal Register on October 13, 2005 (reference Volume 70, No. 167, Page 59907). In this response, HUD states as follows:

> **"To allow an owner of a project-based voucher development to rent to close family relatives (whether disabled or not) creates a systematic incentive to owners to misuse the program.** Persons requesting a reasonable accommodation in policies in order to effectively participate in the housing choice voucher program are not harmed by restricting the exception to renting to relatives to the tenant-based program." (emphasis added).

Then, on the other hand, 24 C.F.R. § 983.251(a)(4), which governs selection of tenants and requests for a reasonable accommodation, seemingly allows DHA to approve a tenancy between members of the same family if it determined that "approving the unit would provide reasonable accommodation for a family member who is a person with disabilities."

Paragraph 67 on page 21 of Plaintiffs' Complaint references one of DHA's requests for guidance from HUD by DHA, as Plaintiffs quote from an October 11, 2017, letter from Regenia Hawkins at HUD to DHA's President, Troy Broussard. For the purposes of optional completeness, Defendant attaches a copy of this letter as Exhibit "A" hereto for the Court's convenience.[3]

As noted in the correspondence attached hereto as Exhibit "A", DHA initially requested guidance from HUD on whether "property owners with a project-based voucher contract [can] rent to relatives if their close relative is an applicant with a disability seeking approval to live in this project-based voucher assigned dwelling as a reasonable accommodation." HUD initially provided a response to DHA, however, that initial response "did not consider" 24 C.F.R. § 983.251(a)(4). Subsequently, on September 27, 2017, DHA requested "further guidance" from

---

[3] While a court generally may not go outside the complaint in addressing a Rule 12(b)(6) motion, it may consider documents attached to the complaint, as well as documents that are referenced in and central to the complaint. *See Kennedy v. Chase Manhattan Bank USA, NA,* 369 F.3d 833, 839 (5th Cir.2004); *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir.2003).

HUD on the interplay between 24 C.F.R. § 983.210(e) and 24 C.F.R. § 983.251(a)(4). *See* Exhibit "A" attached hereto at 1.

As correctly noted by Plaintiffs on page 21 of the Complaint, HUD responded to this request for guidance by instructing DHA to "handle a [project-based voucher] tenant's or applicant's reasonable accommodation request as it would any other accommodation request." *See* Exhibit "A" at 2. HUD then continued by advising DHA to make a request to HUD for a "regulatory waiver of the certification regulation," (i.e. 24 C.F.R. § 983.210(e)) in cases in which it granted a reasonable accommodation request under 24 C.F.R. § 983.251(a)(4). *See* Exhibit "A" at 2.

After providing DHA with guidance on how to navigate these two, seemingly inconsistent regulations, HUD also advised DHA of a problem with the RFP at issue. Specifically, HUD advised DHA that the RFP's proposal to "limit the PBV assistance to a specific class of individuals with disabilities may not be permissible under Section 504." *See* Exhibit "A" at 2. HUD also directed DHA to a number of regulations addressing this issue, such as 24 C.F.R. § 8.4(c)(1) (prohibiting the exclusion of other qualified individuals with handicaps from participation in a program, unless the program "is limited by Federal statute or Executive Order to a different class of individuals"); 24 C.F.R. § 8.4(b)(1)(iv) (prohibiting "different or separate housing, aid, benefits or services to individuals with handicaps or to any class of individuals with handicaps"); 24 C.F.R. § 982.207(b)(3) (applicable program regulation precluding preferences for persons with a specific disability). Based upon the above-cited regulations, DHA was forced to suspend all actions with respect to the RFP at issue.

Thus, the only factual allegations asserted by Plaintiffs in support of the alleged "policy or practice of categorically banning family ownership in the PBV program" (i.e. discontinuing the

PBV program at issue and communicating this information to CPSH) fail to establish the existence of such a policy on the part of DHA. As a result, even if Plaintiffs had been able to point to a current or existing RFP wherein individuals with I/DD's had requested a reasonable accommodation relating to familial ownership, DHA would nevertheless be entitled to dismissal of each of Plaintiffs' claims based upon Plaintiffs' failure to identify a single encroachment upon any legally protected interests which are "actual or imminent."

This failure by Plaintiffs also demonstrates that their claims are not ripe for adjudication. *Roark & Hardee LP v. City of Austin,* 522 F.3d 533, 544 (5th Cir.2008) ("[A] ripeness inquiry is often required when a party is seeking pre-enforcement review of a law or regulation."); *Wright v. Spindletop Films, L.L.C.,* 830 F.Supp.2d 280, 284 (S.D.Tex.2011). A federal court may exercise jurisdiction over an actual controversy, but not premature or speculative issues. *Shields v. Norton,* 289 F.3d 832, 835 (5th Cir.2002). In that Plaintiffs' claims are speculative, dismissal is warranted.

Second, DHA is also entitled to dismissal of each of Plaintiffs' claims based upon Plaintiffs' inability to establish a causal connection between any injury they claim to have suffered and DHA's conduct. *See, Lujan,* 504 U.S. at 560. In this case, dismissal of Plaintiffs' claims is warranted because Plaintiffs have wholly failed to demonstrate that they have suffered any injury in this case, and because they cannot establish a causal connection between any injury and DHA's actions.

In this regard, CPSH admits to having "worked collaboratively with DHA" to develop the RFP at issue (Plaintiffs' Complaint at 18). However, the RFP at issue was in all likelihood doomed from the start to the extent that it sought to limit PBV assistance solely to individuals with I/DD's. Thus, neither Plaintiffs nor their children were injured by not receiving housing assistance under this RFP.

In addition, DHA did not author the regulations in question, nor did it create the conflict between 24 C.F.R. § 983.210(e) (owner certifications) and 24 C.F.R. § 983.251(a)(4)(tenant requests for reasonable accommodations). Instead, DHA merely sought guidance regarding these conflicting regulations from HUD. Plaintiffs were not harmed by DHA's actions in seeking guidance from HUD, nor were they harmed by DHA's delay in acting upon the RFP in question, and therefore, Plaintiffs cannot establish a causal connection between any injury they claim to have suffered and DHA's conduct.

Third, dismissal of each of Plaintiffs' claims is warranted based upon Plaintiffs' failure to establish that it is "likely" that a federal court decision in Plaintiffs' favor will redress any injury they claim to have suffered. *See, Lujan,* 504 U.S. at 561. As more fully described above, Plaintiffs have failed to establish that they have suffered any injury in this case, but even if they were able to establish the existence of an injury (which is denied), a federal court decision would not provide a remedy.

Plaintiffs' unsupported and conclusory allegations as to the existence of a policy to deny reasonable accommodations in situations involving a familial relationship between tenants and owners are insufficient to establish that such a policy exists. In the absence of such a policy, the declaratory and/or injunctive relief requested by Plaintiffs would not redress any injuries Plaintiffs claim to have suffered. To hold otherwise would allow these or other Plaintiffs to traverse the country suing and attempting to bankrupt every housing authority in the country based upon, as here, a mere allegation of a policy without any evidence of a single request for accommodation having been made or denied.

## III. CONCLUSION

Plaintiffs' allegations in their Complaint do not state a plausible claim for relief against DHA. Plaintiffs' allegations, particularly those regarding a "categorical ban on permitting the rental of PBV-subsidized properties to adult children with I/DDs by family members" are vague and conclusory, and do not provide factual content beyond labels, conclusions, and a formulaic recitation of the minimal elements of their claims. In addition, Plaintiffs have wholly failed to provide well-pleaded facts to establish: that they have standing to bring their claims; that their claims are ripe; and/or that they have established each of the elements of their claims. These failures are fatal to Plaintiffs' claims, and therefore, this motion to dismiss should be granted in its entirety.

WHEREFORE, Defendant DHA prays that Plaintiffs take nothing by this suit against it, that all relief requested by Plaintiffs be denied, that the Defendant DHA recover its attorneys' fees incurred in defending this action, all costs of suit, and for such other and further relief to which Defendant DHA is entitled.

Respectfully submitted,

WALKER BRIGHT PC
100 N. Central Expressway, Ste. 800
Richardson, Texas 75080
Telephone : (972) 744-0192
Facsimile : (972) 744-0067

/s/ Gerald Bright
GERALD BRIGHT
State Bar No. 02991720
DAVID CRAFT
State Bar No. 00790522

**Attorneys for Defendant DHA**

**CERTIFICATE OF SERVICE**

I certify that on the 5th day of February, 2019 I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Gerald Bright
Gerald Bright